Aenergy, S.A. v. Republic of Angola Mr. Levy for the Abalance, Mr. Aronson for the Imbalance. Mr. Levy, wait for the courtroom speakers. Good morning. Let me see if I can go higher. May it please the court, Vincent Levy for the Plaintiff, Aenergy, S.A. This case concerns a, was brought in the District of Columbia District Court and seeks repayment of a debt. The plaintiff had energy contracts with the Republic of Angola and state instrumentalities. Contracts were terminated, and at that time, the plaintiff had performed substantially more work than it was ever paid for. By this action, the plaintiff seeks repayment of those amounts. The District Court found that it had jurisdiction over the case under the direct effects clause of the commercial activity exception to the FSIA. It also found that jurisdiction in Angola would be lacking because of a jurisdictional time bar that had now elapsed in Angola. The court nonetheless dismissed the case on the basis of foreign nonconvenience in favor of Angolan court, principally relying on a decision by the New York federal courts concerning a broader case in which the plaintiff had sought damages and other remedies for the termination of the contracts. We think in view of the finding that there was jurisdiction here and no jurisdiction in Angola, that the court's reliance on the New York rulings and its fresh analysis of the foreign nonconvenience factors was legally erroneous. And the court also erred in its FNC analysis in failing to hold the defendants to their burden of proof on each of the factors. You say there was a there was jurisdiction here and no jurisdiction in Angola, meaning I missed that ladder. Right. So below in our complaint, we allege that our claim was jurisdictionally time barred because there's a hundred eight hundred and eighty day, 180 business day period to bring a claim for damages in Angola. That that is district court didn't hold that it was time for the district court credited our assertion that it was time barred. That's assumed without deciding. Well, so the Second Circuit assumed it. The district court here used the word credited, whether that means assumed or found either way. That's a page a one twenty seven. We had made the allegation in the complaint that it was time barred. That's that page or paragraph fifty nine of our complaint. We substantiated that with legal authority and a declaration. The Angolan defendants did not dispute the point in their opening papers. They submitted a declaration on reply that we moved to strike as untimely and which the district court declined to consider. And it's in its decision. The court said at a one twenty seven that it was crediting the assertion that the claim was subject to a non waivable time bar in Angola. Mandatory one. Why? Why didn't energy include it's the claims, other claims that it brought in SDNY in the case here? We thought that would be precluded under the doctrine of issue preclusion. We thought consistent with cases. Well, upon refiling a case that was prior previously dismissed for FNC, the doctrine of issue preclusion, not claim preclusion applies. And we thought that if we filed obviously the same claim, that would be the issue. The issue of form not would have been decided. And the motion, the prior disposition would have been issue preclusive. But cases such as I think all the cases we cite, such as the J.C. Renfro case, the conflict kinetics case out of the Fourth Circuit, right. And Miller all say that if there are material distinctions between the issue between the forum nonconvenience issue in case two and in case one, then the prior ruling is not issue preclusive. I think that standard is common ground. And by narrowing our case, which is what the plaintiff did in J.C. Renfro, we felt that we address the concerns of the New York courts. And we also felt constrained to file it here because as the court found, there is jurisdiction and we could not bring a case for any remedy for the unpaid work claims in Angolan court. So the claims in the Southern District of New York, there were eight claims and those were all arising out of the same transaction or occurrence in the sense of there was a some activity by your client. It was not remunerated. I think that's right. And so now when energy brings only as a formal matter, the contract claim isn't the preclusion analysis the same because the question for preclusion purposes is, I mean, the question for forum nonconvenience is can the subject matter of the case that is filed here, whether in New York or in D.C., be brought in Angola and the transaction or occurrence at issue in New York and the transaction or occurrence at issue here are the same, even though only one legal theory is advanced here. And so the question then becomes, can that wrong that your client allegedly suffered find a process that will address its subject matter in Angola? I think that this court in several decisions, including the Marian, make clear that in the situation where if a plaintiff would prevail on its claims here and obtain a relief, any relief. If that in that situation, but if in the other form where it to prevail and establish the same facts, it would obtain no relief, then there is no basis for subject matter for for a form on convenience dismissal the court. And this is a page. It's three fifteen after three ninety court said. This is a quote. We fail to see how an alternative form in which the plaintiff can recover nothing for a valid claim may also be deemed adequate. It would be peculiar, indeed, to dismiss the Mariam's, the plaintiff's claim in the United States District Court, a form in which assuming the court has jurisdiction, she is certain to be awarded full relief if she wins on the merits of her claim in favor of a form in which she has no certainty of getting any relief for a meritorious claim. The subject matter of this case, the one we filed in the District of Columbia District Court is for is about whether a energy was fully paid for the work it performed. That was a very small subset of the matters at issue in New York. The SDNY and the Second Circuit made clear in their decision that the case was about whether the termination was proper and whether it had been wrongfully procured through fraud by General Electric through torts. Those were the issues that the Second Circuit and the New York and the federal court and this and the SDNY focused on the factor in about claims you could have brought in any one of the jurisdictions, because some of the discussion essentially criticizes strategy and form shopping, etc. In that you all are not pursuing the same actions or claims that could have been brought in the first instance in Angola. We are now, you know, just coming to this hearing left with this one page order or actually an excerpt from the order that is 222 pages and in Portuguese. And so we don't have a way of knowing what actually happened without this translation and that particular translation and order was also not before the district court. So two questions there. One is about the what you could have brought, you know, in terms of you bring in different things in different forms, but what you could have brought in Angola. And then secondly, how do you feel like we are able to proceed here now that we do have something from the Angola court. Right. So a couple of a couple of responses. One, there are decisions from this court and the Supreme Court that make clear that form nonconvenience is an opposite if there's no other form. And it follows also that the reason why the other form is unavailable is not relevant. And Norex makes that clear. Okay. And that could be two things. One is not available because the remedy is not available or it could be not available in this instance that they've already ruled. And so the case is over. So you can't go back and reopen the file, if you will. That's right. So help me along those lines. And I think that was the situation in Norex where, if I remember correctly, there was a prior decision, I believe, in Russia, the Second Circuit case. And the court said, if the prior disposition has a bearing on the case on the new case, it would be potentially as a matter of issue preclusion or some other claim preclusion defense on the merits, but not as a threshold abstention type dismissal. So that's one point. I will go into, I think, Judge Childs, you mentioned, of course, this new development. Apologies for not providing the full translation. I obtained a copy that last week. Needless to say, 200 pages is long to translate in one week. The point, though, is now that the case is over, that case in Angola, the basis for the district court's disposition can no longer stand because the entire adequacy ruling rested on the fact that a case could be brought in Angola, namely one that was proceeding. And so, for example, at A-125, the court notes that the Second Circuit hinged its ruling on the reinstatement. That's A-125. And the court did so again at A-127. And with that case now over, our view is because of the unavailability for jurisdictional reasons of any claim in Angola, reversal is in order because there is no forum in Angola where this claim could proceed. So there was, the claim in New York was a claim for unpaid work. There was, there was a breach of contract claim, which had, which alleged to be a breach of contract. There were multiple paragraphs in the cause of action. The way the court understood it, and you pleaded in New York as a claim for unpaid work, no? No, the primary remedy that we were seeking was for lost profits on account of future work that wasn't performed. We had, I believe, three or four lines in the cause of action for breach of contract that also said we also perform work that we weren't paid for. But the primary remedy that we sought in terms of damages was for lost profits, for the taking of property by Angola, namely turbines, that were worth $100 million. So I think we estimated the damages in the prior case at $500 million or so. I believe the unpaid work is in excess of $100 million. So most of the damages were for lost profits, as far as I can remember. And that's certainly what the court analyzed. And the Second Circuit, as the district court here said, the adequacy ruling hinged on the fact that a reinstatement remedy was being sought. That is a remedy for termination of a contract, not for work that was done and not paid for. The termination order itself said that it was without prejudice to the settlement of account, meaning that whether the termination was valid or not, there would be a settlement of account. In the first instance, our client, my client, sought to exercise its remedies under Angolan administrative law, similar to the first case the court just heard, to have that order reversed. That's a process, a streamlined process, to have an administrative law claim heard. Typically, when this court hears administrative law claims, it doesn't get damages actions at the same time for lost profits. That's the same, in my understanding, in Angolan court. And so it first sought reinstatement. And when that failed, my client filed a case in the United States, in the SDNY, against GE, against Angola, for lost profits seeking damages for the termination of the contracts, as well as the unpaid work. That was dismissed. And just as if a case is dismissed on a threshold issue, like, for example, for lack of diversity, and because the parties are not diverse, you drop a party and make it diverse, we refiled the case and included only the claim that was not addressed expressly in the prior disposition. Was the basis of Energy's claim for unjust enrichment in the Southern District of New York, in part, the fact that Angola benefited from and didn't pay for prior work? Off the top of my head, I don't remember. What I will say is, again, what was briefed, what was argued, what was decided, was all about termination. I think the Angolan, the defendant, the defendants, the appellees here, acknowledged that the issue of the unpaid work was not separately addressed in either the briefing or the decision of the Second Circuit. I'm just looking at the Southern District of New York complaint, which alleges in paragraph 242, through the conduct set forth herein, the Angola defendants gained goods and services from plaintiff, empowered generation output and services without providing compensation to plaintiff for said output and services. So, it seems like this is about the, it encompasses this question that is the focus of the case here. Excuse me, please stop shaking your head. That's improper. I apologize. Go ahead. I believe, similar to the contract claim, it would be probably encompassed in the unjust enrichment claim as a mode of relief. The focus of it, though, again, was the termination and a taking of these turbines that was discussed in the prior case, where we allege that there was a fabrication of documents by a former executive of General Electric, who has been since indicted and is standing trial in the SDNY in November, that there was a fabrication of documents and that this was used to take turbines. That was the focus. I think, similar to the contract claim, a subset of that claim potentially encompassed the unpaid works that we're seeking here. Again, in terms of what was actually decided and what was briefed in terms of the foreign nonconvenience analysis in New York in the Second Circuit, the focus was on the termination and the taking of property and the justifications that were made for it. This is an entirely, again, entirely different case, this case, that seeks a payment for work performed. We know the amount of money that my client received. That's in documents, $644 million. And the question is whether it received more or less than that amount. We claim that Angola received more than $644 million, and that claim could not have been raised in the Angolan Supreme Court, was not raised in the Angolan Supreme Court, and of course the Angolan Supreme Court has now ruled. So there's no pending claim in Angola, and the court below again credited that the claim was time-barred in Angola and that no relief could be sought. And the district court below acknowledged that the ruling of the Second Circuit hinged on that. The court said at page A-125, the Second Circuit relied on A-Energy's pursuit of equitable remedies in finding that Angolan courts could address the essential subject matter of the dispute. Equitable remedies reinstating the contracts, and that's what the district court is referring to, citing the Second Circuit, do not address at all whether the subject matter of the dispute here, which was there unpaid work that was not compensated, and a positive remedy, a positive resolution of the factual disputes, would not provide any remedy, just as in the Marion. So if you were to have to go to Angolan court, putting aside this case and under the Second Circuit's non-convenience holding, is it your position that Energy could get monetary compensation if it were to win an unjust enrichment claim? Could it get monetary compensation for the unpaid work? No, I think at this point, the 180-day time bar lapsed. It's 180 business days, so it lapsed. That's for the contract claim, but I'm asking about an unjust enrichment claim. As far as I know, and this issue was not addressed below, and the way it was briefed in the Second Circuit, we argued that the only procedural vehicle to obtain any remedy in a contract dispute is under this provision of the law, this procedural vehicle that provides a 180-day period. And so our view is there is no viable path for any remedy, under any theory, for the unpaid work in Angola. And I think the district court below proceeded on that basis. That's not how I read the district court proceeding. I thought it was assuming that the contract claim, per se, was subject to that. I thought that was what you argued. Well, I think at page 8125 and again 8127, the court relies on the administrative appeals that were filed challenging the termination. And 8125 is the issue preclusion point, and 8127 is the fresh look. In both of those points, the court relies on the administrative appeals that challenge the termination. And that's the basis that the court invokes. It says, the court says, ANRG submits this claim as barred by a non-waivable limitations period. That's at 8127. The court credits this allegation. Even so, it does not follow that Angola is an inadequate forum. Then there's law about providing plaintiff some remedy. And it says the court joins the well-reasoned decisions in New York. Angolan courts provide ANRG with a remedy for its contract disputes. ANRG filed administrative appeals challenging Angola's termination. And then it goes on to say that we sought reinstatement, which is all true. But it doesn't get to this point, which is that a remedy of reinstatement for termination, which, by the way, has now been denied, so it's not available now to the extent it ever was, does not address the dispute we have here, which is for unpaid work, and does not even concern the same subject matter of the dispute. It's just an entirely different matter whether the administrative agencies, the president of Angola, abided by the law in its ruling. And I think we set forth, we have our petition, which is what the Angolan court relied on. The court has a translation of that. That's an entirely different matter as to whether in a civil suit, the plaintiff can prove that beyond the $644 million that it received, there's work that's worth more than that. Those are entirely different matters. And Angola has not argued otherwise. Angola has said that the petition in Angolan Supreme Court does include a request for compensation. That's, as we say in our brief, that's contrary to the position that its lawyers said below under oath. Angola said that the limitation period does not apply. Of course, that would be affirming on a different ground because the court below credited that it did apply, that it was non-waivable. And Angola doesn't substantiate that argument other than pointing to a reply affirmation that the court below disregarded. And so there's really no support for the reasoning of the district court. And Angola also comes up with this new argument for the first time on appeal that we self-sabotaged our own case because Judge Cronin in New York proposed to conditionally dismiss the case on a waiver by Angola of limitation period, given that the court, well, that argument was not made below. So it's improperly raised. But the court would also, this court, if it were to affirm on that ground, would have to reverse or would have to not adopt the reasoning of the court below because the court below said that the limitation period was non-waivable. So a waiver by Angola of a limitation that is non-waivable, it wouldn't have solved anything and there's no so-called self-sabotage. Can you just fill us in a little bit on the role of the exit arbitration? You know, Ricardo Machado, the owner of your client's owner, has filed a claim against Angola and exit under the Portuguese Angola 3D. What's the what's the status of that? What's the conduct that's at issue there? My understanding is that that case concerns the taking of turbines. So there is there isn't overlap as far as I'm aware. I also understand in terms of the status, I believe that the two parties have selected arbitrators and the two arbitrators are in the process of selecting a chair. And I understand that Angola in that case is disputing that the treaty applies and that there is jurisdiction under exit. At least that's what Angola has said in in the letters I've seen in which Mr. Machado was the shareholder makes a claim for compensation under the exit treaty. Although they have nominated an arbitrator. They have and they have nominated arbitrator and I think the arbitrator would decide the jurisdiction question. I was surprised when I first started reading the papers in this case to see that there was an arbitration clause, but that nobody had sought arbitration. Can you just put that into context for us? Right. So we did not seek arbitration. First of all, there are 13 different arbitration clauses in 13 different contracts going in a number of different directions. The defendants below and in New York asked for arbitration and the alternative. We oppose that on the basis that of numerous reasons in the district court below did not reach the question. The some of the arbitration clauses point to Portugal. Others point to Angola. But even the ones that point to Angola also provides an alternative that the arbitration could provide elsewhere under certain rules. I believe that we proposed to resolve this forum fight with my friends in Angola by proposing an arbitration in London, which is a neutral forum where the facility where Angola had agreed to arbitrate certain disputes under the credit facility and that offer was rejected. But this is going ahead where? I actually don't know where it's going ahead. They exit arbitration. I apologize. I'm not a council of record in that proceeding. I do know that Mr. Machado and other former employees of energy have do not wish to travel to Angola for fear of their public, their personal safety, and that would be for court or arbitration proceedings. There were submissions to that effect below which were credited. As to the recent Angola Supreme Court decision, you're not arguing that the fact that you lost that has any bearing at all on the analysis. Well, I think that the fact that that was now that has now been disposed is is an alternative basis for this court to vacate. And because, again, the analysis of the court on of the district court on adequacy, and that's page eight, one twenty seven and a one twenty five, hinged on the availability of and the proceedings that were going on in Angola at the time of that decision. Now that those have concluded, there's no those do not provide a basis for a forum nonconvenience dismissal. I think Norex makes the point, as I mentioned in response to a question by Judge Childs, that potentially a disposition by a foreign court may be issue preclusive and could give rise to an issue preclusion defense on the merits. But it would not provide a basis to abstain in favor of another forum. And similarly, it would not provide a basis for a forum on convenience. And given that the reasoning of the court here relied on that decision, sorry, relied on the pendency of the Angolan proceeding as a basis to find Angolan court adequate. Now that those proceedings are over, the reasoning itself, which is what the court would review. I'm not seeing. I mean, if I may be misremembering a lot of different decisions in this case, but. I thought what the court relied on was that you chose to go to the Angolan court for at least part of your disputes with Angola. But your position is that that's a separate dispute. And so I'm just not sure that a merits loss, what what light it shows just to go there. You don't prevail. What light does that show on either the inclusion issue or the fresh forum on convenience analysis that we're being asked to make? Well, I think our first argument is because putting aside is that in a way that was this was all irrelevant because the proceeding didn't consider concern the termination proceedings below. If that's arguments rejected, of course, where the other arguments we make are rejected. Our view, based on this recent development, is that the decision below should be vacated to consider the effect of this decision because there are, of course, a number of issues were tendered for disposition below. But the adequacy ruling in part, and that's again, a one twenty five, which is the adequacy ruling on the issue preclusion under issue preclusion that hinge on dependency of the reinstatement case. So in the middle of a one twenty five, this is in the context of the issue preclusion discussion. It says the Second Circuit did not consider it said it was sufficient for the Second Circuit. Right. That energy was before the Supreme Court seeking reinstatement of the utility contracts. That's no longer true. And so that was a key factor for the district court to hold on issue preclusion that going forward was adequate. And then on a fresh look, which starts at a one one twenty six, the court comes back to it on a one twenty seven. And that's the passage I pointed the court to earlier, which references the pending administrative appeals challenging the termination. Those are ongoing. And so given that the court, this court reviews a form nonconvenience for abuse of discretion, if the factual predicate for the decision no longer obtains, I think the proper remedy could be would be a vacate or a remand. But again, given that there's a legal error here in terms of inadequacy of the ongoing form, given the non waivable time limitation, we think the court should just reverse as a matter of law. Just as in the Marion, which is what happened there, where there is no remedy abroad for the claim brought here. There can be no dismissal on form nonconvenience. Marion says that the court, the Supreme Court in Gilbert, which sets forth the original standard for form on convenience, makes clear that form nonconvenience is about providing a basis for deciding between two forums. And when there's obviously when there's only one forum, the doctrine has no application. It's a venue. It's not a it's not a merits based analysis. All right, we'll give you a couple minutes and reply. Let's hear from Mr. Aaronstein. Thank you. Good morning. Good morning. May it please the court. Mike Aaronstein on behalf of the goal and defendants. The sole issue really presented. By this family of cases is whether or not the district court in this district. Or in New York or anywhere in the United States, for that matter, is the appropriate forum in which to adjudicate this uniquely and goal and dispute. We have an end goal and plaintiff. We have and goal and defendants. Litigating over and goal and contracts negotiated, executed, performed, terminated. All in Angola under and goal in law. And all using the goal and national language of Portuguese. The answer to the question presented. Was no in New York in the district court. It was no in the Second Circuit. And we submit it should remain no. Here today. Now, in the district court, in this case. The plaintiff filed suit energy filed suit saying. I'm owed money because I have not been paid for work that I've performed and services that I've delivered. And the plaintiff claims the appellant claims. That that is much different than what had previously been argued. In the southern district of New York and in the Second Circuit. We respectfully submit that the appellant is wrong. The case in New York specifically. Included, although it included other claims and one and other parties, it absolutely included specific allegations. That. The appellant had performed work. For which it had not been paid and that it had lost. Millions and millions of dollars as a result. Judge Cronin considered that argument. And the Second Circuit considered that argument. And by the way, they considered that argument in the context. That is being raised again today and which was raised again before judge McFadden. Saying, but we don't have a remedy. We don't have a remedy because we're time bar in Angola. Now, we don't agree with that and the record shows. Our experts contend that it's really a 20 year statute of limitations and not a hundred and eighty. A day statute of limitations, but. Even if you credit. The argument that there is a statute of limitations, which bars prosecution of this claim for damages in Angola. That is not the same thing as saying there's absolutely no remedy available. And therefore, at least for form, non purposes and for purposes of collateral estoppel. The court specifically noted that there was a remedy available and that it doesn't have to be the same remedy. You don't have to have the identical type of claim available, the identical type of damages available. There was a remedy available and it was being pursued at that time. Is there any precedent that an alternative forum is adequate when the plaintiff brings a claim for money for damages and the alternative forum offers only non-monetary equitable relief? There is. I don't know. I don't want to misspeak your honor and say that I know that there is a case that says exactly that if I'm not positive. But what I can tell you for sure is that the 2nd Circuit considered it and specifically held that the the availability of a remedy in Angola was sufficient. And and and that is because the Angolan case was dealing with exactly the same essential factors that were in dispute. So. Which which gets us back to Judge Child's question about what, if anything, is really the impact of the Supreme of the decision, the recent decision by the Angolan Supreme Court. That is not of record. It is not completely translated and we have one page of a 223 page ruling. What I have been informed is that that ruling expressly says that. Although the terminations were proper, the terminations of all of these contracts and rescissions were proper and affirmed, there is a pathway for the for a energy to pursue a claim for damages. If it files a separate lawsuit in Angola, it certainly doesn't say pursue those claims here in the United States. What we would request, and I know it's percept procedurally unusual. We would like an opportunity to see a translated version of this Supreme Court ruling, and we would like a few days to highlight for the court the paragraphs, which specifically say, yes, you have this claim to go and proceed in Angola for your damages. And then I'd be curious as to whether or not the claims with respect to damages were ever brought up, you know, like contractual damages or equitable damages in Angola. Because just listening to what you just cited to us about being informed that. Although the terminations were proper, there is a pathway for energy to pursue the damages. It makes me believe that there was some discussion on the record, at least there was. OK, if I'm sorry to interrupt. That's what I'm getting at. Yes, there was, Your Honor. In fact, in the complaint in the Supreme Court, which is part of the record, we're talking about the Angola. Yes, yes, ma'am. OK, just want to make sure we're in the right court. Yes, in the complaint in the in in the Angolan Supreme Court, which is also a very large document. There are paragraphs within that complaint in which the in which a energy specifically alleges, by the way, these terminations have harmed me. By the way, these terminations have resulted in me in a energy not getting paid for the first for the services it has provided and a energy specifically alleged. We reserve the right to be able to pursue that at a later point in time. That's in the complaint. My understanding of the recent ruling is that the Supreme Court of Angola acknowledged that and said, although these terminations are correct, if there has to be an adjustment of the accounts between the parties, because by the way, I think Angola claims that it's due money back from a energy that that has to take place in court in Angola. In a separate lawsuit. So to get back to the issue presented. Because collateral is stopped because it is the same case, the same transaction or occurrence as Judge Pillard had been asking about the same issues, the issue of foreign nonconvenience that was decided by the Southern District of New York and affirmed by the Second Circuit. Does collaterally a stop the renewed prosecution of that claim here now? That's a public interest analysis. Is it affected? You say that the balancing of public and private interests, the same in this case as in New York, even though the contract claim before us doesn't allege wrongful termination of the contract. It's really looking at what happened before termination. And you say, well, the defendants will rest on their justification for terminating the contracts. And that's the same evidence, but. I'm not I don't see how a valid termination would relieve Angola of any obligation it may have. To pay energy for a energy for work that it already. We I think we agree. Angola is not written and Angola's position or Angolan defendant's position is and has always been since the date of the termination. If there's an adjustment of the accounts between the parties that needs to take place, it must take place. That was in the president's decree, and it was affirmed now by the Supreme Court of Angola, saying that that has to take place, whether Angola owes money back to a energy for. It's services and goods that were not paid for, or whether a energy owes money back to Angola for. Overcharging for services and goods that Angola never received, that's an issue that has to be adjusted, but for purposes of the Supreme Court decision in Angola, it said the termination of was proper. But you don't think that that that. Difference that the narrowness, the relative narrowness of the case before us. Changes the public and private interest balancing, if any, that is done in the New York case such that we can't say it's the same issue here. Were we to be analyzing this under preclusion? If you look at it under preclusion, I think it has. There's no objective facts that are materially different in terms of the private and public interest. If you take a fresh look at it. Finding that collateral estoppel does not bar the claim, and you look just at form on convenience separately. The private and public interests are largely the same as in the New York case, but even more so what tilt now more in favor of. The goal and defendants request for form on convenience dismissal and the reason we say that is because in in the New York case. There were other parties that did have presence here in the United States. There were certain witnesses, which may have been present here in the United States, and there were documents and related claims that were commingled that were here in the United States. Here, there is no interest that this that this court should have or can have in the. In the solely and Golan dispute, which is is going on here, you just argue yourself out of preclusion. It doesn't matter which way it cuts, but if the issue here is different. Then why would we rely on preclusion? You seem to there be leaning into a fresh form nonconvenience analysis, but are you thereby abandoning your preclusion analysis? And I sounded like you were no, I hope I hope that is not the message that I'm delivering. What I'm saying, your honor, is that preclusion applies and bars the claim. How based on the you just say the public and private balancing is different. I said, if you take a fresh look at it, if you say that you're going to ignore preclusion. And not apply it, then under a fresh analysis, it would be largely the same, but more so in favor of the angle and defendants under a fresh analysis. It's your burden to provide the district court with sufficient evidence to determine that an adequate alternative forum exists. Yes. What evidence did you provide to the district court in this case? Well, there was a couple of things. First, we had incorporated and relied upon the decisions of the New York court. But you didn't provide the evidence you provided in New York to the court here to for its own evaluation. We ultimately did. We did provide an affidavit or declaration of Enrique Abacasis in support of our motion to dismiss, which spoke about where the witnesses are and where the documents are in the language and the convenience. That's not about the adequacy of the Angolan. That's correct. Yes, your honor. With respect to. Adequacy. We. I'm trying to remember argued. I'm not aware of you ever having provided any evidence on the adequacy of the Angolan forum or even asking the district court to take judicial notice of the factual record in the southern district of New York case. You asked for judicial notice of legal proceedings in Angola. Yes, but I'm not aware of any place. And if you point me to a place where you did, I'm not aware of any place where you could have done that. You asked the district court in this jurisdiction to take judicial notice of the factual showing in the southern district of New York record. So I'm not sure how we could do a fresh. Your honor, I'm not going to use analysis here. Given your burden, you are correct that there is no specific language within our briefing saying, please take judicial notice of the of the of the New York case. We did at the inception of the case, identify the New York case. I'm sorry, the inception of the district court case here, identify the New York case as a related case and highlighted the fact that. Even the appellant had indicated that it was substantially related and when it filed its motion to stay substantially related, substantially related parties and claims and facts. So, that is the extent of the request for judicial notice. There wasn't any formal judicial notice request. However, when we brief the issue in the motion to dismiss, we argued based on the arbitration clauses that you focused on earlier that the burden on form nine convenience and adequacy was on everything had been shifted as a result of the Atlantic Marine analysis. When you have a forum selection clause, which in arbitration, we contend that our arbitration clauses here are a species of forum selection clause. But that's only when you've selected the particular forum that you're then proceeding in. That doesn't have any application to a third forum. That would render adequate the arbitration. Which we did ask the court in the motion to dismiss originally that was in the motions to dismiss here and in the motions to dismiss in the New York case, we did ask for the court to send the cases to arbitration. Based on the arbitration clause. I'm sorry, I interrupted you. You were making this point based on the Atlantic Marine. Yes, because of the burden shifting that occurs when there is a forum selection clause that we did not produce evidence and declarations and refer to the record in the New York case at that time because we felt that our burden was being sustained by law. Because there was an arbitration clause. Correct. And arbitration clause is a form of foreign selection clause. Yes, ma'am. But there was no forum selection clause selecting Angola. There was a forum selection clause that was almost identical in all of these contracts. The excerpts of didn't select Angola. Well, it did. It selected Angolan law, and it gave two different Angolan arbitral procedures that could be followed. But it didn't say venue. I may be missing something obvious, but you weren't asserting that this case should go to arbitration. We did. But but so you were I mean, I didn't read your brief as saying, oh, put aside where the Angolan court system would be adequate because everybody has to agree based on the arbitration clause that an arbitral form would be adequate. That's what I hear you to be saying now. But I don't I didn't understand you to be making that argument in your I'm I was not. So let me try to clarify. The argument to refer to dismiss and refer the cases to arbitration was made in our motion to dismiss. The court chose to rule only on the form on convenience and collateral estoppel issue. When it made that choice, we argued that the arbitration clause changed the burden for purposes of form nonconvenience. And it changed it from us having to bear the burden of demonstrating adequate alternative forum. To the appellant having to bear that burden and that in almost every case where there is a valid forum selection clause. That burden is born is satisfied. Then afterwards, you because because you were asking about whether we submitted anything else after the. Plaintiff after appellant filed its response to our motion to dismiss and said, yes, but you haven't filed anything. At that point in our reply, we made reference to all of the declarations that had been filed in New York. Those declarations were submitted. And a energy move to strike, saying that this was new argument being raised on on on reply. And judge McFadden never reached that issue. He said he's denied the motion to strike as move. But we did put in record evidence of the adequacy of the forum as well as. The the convenience factors with respect to the adequacy of the form, I would point the court to the declaration. Declarations of Professor Deon, the two who spoke at length, who wrote at length about the. The statute of limitations and its effect. All right, if there are no more questions, where is the arbitration being conducted? I don't know. I'm not counsel, but it's my understanding that it's going to be conducted here, but I don't know. Thank you. I haven't I don't want to monopolize your time if you don't have any other questions. Thank you very much for your attention. And if you'll give Mr. Levy to. Thank you. Thank you, Your Honor. A few things. First, I do think there is effectively a concession that issue preclusion does not apply. And on a fresh look, the court must look to the evidence that was submitted. There was no evidence on adequacy. The evidence of the other factors was lacking. And a mere citation to the findings of the prior court on the assumption that issue preclusion does not apply. Surely cannot be enough on a fresh look. Now, my friend says below and here he relied on the arbitration clauses and he cited in his briefing. The diamond case, for example, from this court, I think it was an unpublished decision. The court there looked at an arbitration clause through the lens of the foreign non-select format can use analysis. But the motion was to go to arbitration. And here the motion is to go to and go in court. And the court below did not reach the arbitration arguments by the party. That's at a one thirty five footnote six. With respect to the reply evidence that was submitted, we did move to strike it untimely. And as my friend says, the court did not consider motion to strike because the court declined to consider the evidence. And therefore, so far as the motion record is concerned on a fresh look, there is no evidence. And under a dad of the ninth, the Seventh Circuit case that we cite, that's that's not good enough. This court's decision in Simon, there was a similar deficiency in Simon versus Hungary that your honor authored. There was a similar deficiency on some of the factors with respect to the some of the evidence. With respect to the in going Supreme Court decision, we think the court should address the arguments we've raised as they are stated. And that the the timeliness issue was properly tendered and that a reversal is in order for that reason. And that to the extent being going Supreme Court decision has further bearings that could be for remand, if anything. Thank you. Thank you.
judges: Henderson; Pillard; Childs